CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 2 6 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JERRY P. TATE,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   Case No. 7:04-CV-00543<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | )  By:  Michael F. Urbanski<br>)        United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Jerry P. Tate ("Tate") brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The ALJ found that plaintiff was capable of a limited range of light work and denied his request for benefits. In reaching this decision, the ALJ relied in part on the fact that plaintiff continued to work "pick-up" jobs while he alleged that he was disabled and on the fact that no doctor opined plaintiff was disabled, that his doctor did not advise him to stop working, but only to avoid heavy lifting, and that his medical condition continued to improve even after he reported ignoring his doctor's advice. Having found that the ALJ's decision was supported by substantial evidence, in an accompanying Final Order of Judgement, the court grants the defendant's motion for summary judgment.

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final

decision of the Commissioner must be affirmed. Hays v. Sullivan; 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## **FACTUAL AND ADMINISTRATIVE HISTORY**

Plaintiff was forty years of age on the date of the ALJ's decision, had completed the eighth grade, and had past work experience which was classified by a vocational expert ("VE") as medium and heavy work. (Transcript, hereinafter "R.," at 11, 239-40.) Plaintiff alleges that he became disabled on August 25, 2002, (R. 52-54), at which time he quit his apartment maintenance job. (R. 213)

Just prior to that time, on July 18, 2002, plaintiff initiated treatment for back pain with James G. Nuckolls, M.D., at Carilion Medical Associates in Galax. (R. 140) At that time, plaintiff had tightness in the paravertebral muscle groups with good range of motion. (R. 140) Dr. Nuckolls opined that plaintiff had no limitations of activities other than to avoid heavy lifting, and provided samples of Bextra medication for pain. (R. 140) Dr. Nuckolls ordered an x-ray of plaintiff's lumbar spine. (R. 141) This x-ray was normal.

William C. Bostic, M.D, another Carilion physician in Galax, saw plaintiff one week later and diagnosed him with a displaced disc, L4-5 on the right with myelopathy. Dr. Bostic started plaintiff on a course of Indocin, Tylox, and Flexeril medications for pain. (R. 142) Plaintiff also had one epidural steroid injection, which he reported did not alleviate his pain. (R. 148) A

2

September, 2002 MRI of the lumbar spine showed minimal degenerative changes and herniation at the L5-S1 level to the right of the middle impressing on the right S1 nerve root. (R. 131)

In November 2002, plaintiff reported that he was feeling better after his medication was changed. (R. 155) While plaintiff's straight-leg raising was limited to sixty degrees with pain in the right buttock, thigh, and foot, Dr. Bostic noted that "[i]n general he acts today like he feels better." (R. 155) On another visit in November, 2002, plaintiff reported that he was "holding his own," and that while a little uncomfortable when he first goes to bed, he wakes up without pain and "has none until he begins to stir around when his leg first begins to hurt." (R. 158) In December 2002, plaintiff reported that he had suffered an additional back injury while "trying to lift the corner of a building." (R. 159) On physical examination, Dr. Bostic noted paraspinal muscle spasms bilaterally, but extension of the back did not aggravate the pain significantly. (R. 159) Dr. Bostic stated that he did not see any evidence of aggravation of plaintiff's disc problem. (R. 159) Two months later, plaintiff reported that he had gotten over the localized back pain due to the strain, and that he was being very careful with his activities. (R. 163)

By April 2003, plaintiff reported that he was not working a regular job, but that he was doing minor repair work for people. (R. 164) At the next visit, straight-leg raising had improved to seventy-five degrees on the right. (R. 166) Deep tendon reflexes were equal and active. (R. 166)

Subsequent treatment notes indicate that plaintiff repeatedly cancelled doctors' appointments and took more medication than doctors prescribed. (R. 201) Plaintiff's physicians advised him that they would no longer refill his prescriptions until he was seen for an

appointment. (R. 194) During this time, plaintiff reported that he continued to care for his invalid father and to work occasional "pick-up" jobs. (R. 200)

On August 7, 2003, Richard M. Surrusco, M.D., a state agency physician, completed a physical residual functional capacity assessment form. (R. 132-39) After reviewing the evidence of record, Dr. Surrusco opined that plaintiff could lift and/or carry twenty pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and occasionally perform stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but no ladders, ropes, or scaffolds. (R. 175-83) In support of this opinion, Dr. Surrusco cited the findings on the MRI and findings on physical examination. (R. 177)

At the administrative hearing, plaintiff testified that he quit his job in apartment building maintenance in August, 2002 because he could not "crawl under sinks .. and climb ladders and reach and stoop and bend and such." (R. 213) Plaintiff also indicated that he could not move ranges and refrigerators as required. (R. 213-14) Plaintiff denies having looked for other work and testified that his doctor told him to take it easy for a while. (R. 214) The ALJ asked the vocational expert ("VE") whether work existed in the national economy for a hypothetical individual with the residual functional capacity to perform light work activity subject to a sit/stand option with mild limitations (less than one-third of the time) for pushing and/or pulling with his right lower extremity. (R. 241) The ALJ further indicated that the hypothetical individual could not climb ladders, ropes, or balance, but could occasionally kneel, crouch, crawl, or stoop. (R. 241-42) In addition, the hypothetical individual had mild reduction in concentration, due to the effects of medication. (R. 241) The VE testified that the hypothetical

4

individual could perform the light jobs of file clerk, general office clerk, and parking lot attendant. (R. 242)

## ANALYSIS

The responsibility for determining whether plaintiff is disabled is reserved to the Commissioner. 20 C.F.R. § 404.1503(b). To do this, the Commissioner applies the five-step sequential evaluation process to evaluate DIB claims. See 20 C.F.R. § 404.1520. In arriving at the determination that plaintiff could perform work at the light exertional level, the ALJ relied on the testimony of a vocational expert. Here, as the Commissioner has followed the appropriate process, and as the Commissioner's decision is supported by substantial evidence, by accompanying Order, defendant's motion for summary judgment is granted.

The thrust of plaintiff's argument in this case is that the ALJ made an unsupported determination that plaintiff was not a fully credible claimant. It is well-settled that credibility determinations are in the province of the ALJ and that the courts are loathe to interfere with them. See Hatcher v. Secretary of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). The ALJ is not required to accept all subjective testimony at face value. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Mastro v. Apfel, 270 F.3d 171 (4th Cir. 2001).

After reviewing all of the evidence in the record, the ALJ determined that plaintiff had degenerative changes and herniation at the L5-S1 level with radicular pain, impairments which are severe under the regulations. (R. 17) However, the ALJ also determined that plaintiff had

5

the residual functional capacity ("RFC") for a range of light work. (R. 19) While the ALJ determined that plaintiff could not perform his past relevant work, the ALJ determined that, based on VE testimony, plaintiff could adjust to other work that exists in significant numbers in the national economy. (R. 19-20)

Contrary to plaintiff's argument, the ALJ thoroughly considered plaintiff's subjective complaints in assessing his residual functional capacity. (R. 18-19) The regulations specifically state that subjective complaints cannot themselves provide the basis for disability. See 20 C.F.R. § 404.1529. Rather, there must be signs and laboratory findings that could reasonably be expected to produce the pain or other symptoms alleged. Id. Once such an impairment is identified, the ALJ must evaluate the record as a whole to determine the intensity and persistence of the symptoms and the extent to which they limit the claimant's capacity for work. Id. § 404.1529(c). Thus, a claimant's symptoms must bear a reasonable relationship to the objective medical evidence and other evidence in a particular case.

Here, the ALJ noted that while plaintiff's back impairments could be expected to produce some pain, particularly when plaintiff experiences periods of significant exertion, the record did not include objective evidence of an impairment reasonably capable of producing the debilitating pain claimed by plaintiff. (R. 18) While an MRI showed degenerative changes and a herniation at the L5-S1 level to the right of the midline impressing on the right S1 nerve root, plaintiff's treating physician did not recommend that plaintiff stop working. (R. 131, 140) To the contrary, the physician only directed plaintiff to avoid heavy lifting. (R. 140) Even with this advice, plaintiff later reported that he strained his back trying to lift a corner of a building. (R. 159) Within two months, the localized back complaints associated with this strain abated, and his

6

doctor advised that he needs to be careful to avoid irritating his displaced disc. (R. 163) Of significance, neither this doctor nor any other has opined that plaintiff's back condition is totally disabling.

The ALJ additionally noted that plaintiff's statements did not support his claim of disability. Plaintiff testified that he quit his job because he could not perform the crawling, bending and heavy lifting required of a maintenance worker, but denied looking for other work. (R. 213-14) The record also illustrates that during the period in which plaintiff was allegedly disabled, he tried to lift the corner of a building, performed minor repair work for others and occasionally did "pick-up jobs." (R. 200). Plaintiff's daily activities included housework, mowing his lawn and being a caregiver for his elderly father for much of the time intervening between his alleged onset date and through January 2004 when his father moved to a nursing home. (R. 200, 214-15)

It is the duty of the ALJ to fact-find and to resolve the inconsistencies between a claimant's alleged symptoms and a claimant's ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). It is the sole responsibility of the ALJ to determine a claimant's residual functional capacity – the sort of work he can still do – including making any necessary assessment of credibility. 20 C.F.R. §§ 404.1545. The evaluation of an ALJ as to a claimant's credibility is entitled to great weight. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984).

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is substantial evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act . See Pierce v. Underwood,

7

407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). After a thorough review of the medical record, the ALJ concluded that plaintiff tended to overstate the severity of his physical condition. No physician has opined that plaintiff was disabled, and his treating physician only placed limits on his ability to do heavy lifting. Because the limitations outlined by the ALJ were included in the hypothetical question asked by the VE, the VE's testimony supports the ALJ's conclusion that plaintiff was not disabled. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As the ALJ's determination of plaintiff's residual functional capacity was contingent on a credibility determination he was entitled to make under the regulations and was supported by substantial evidence, defendant's motion for summary judgment should be granted.

## CONCLUSION

For the reasons outlined above, in an accompanying Order entered into this day, defendant's motion for summary judgment will be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and all counsel of record.

Enter this 26th day of April, 2005.

By: Michael F. Urbanski
United States Magistrate Judge